UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DR. R.C. SAMANTA ROY INSTITUTE
OF SCIENCE AND TECHNOLOGY, INC.,

        Plaintiff,

v.                                              Case No. 05-C-422

LEE ENTERPRISES, INC. and
TIM RYAN,

        Defendants.

---

DR. R.C. SAMANTA ROY INSTITUTE
OF SCIENCE AND TECHNOLOGY, INC.,

        Plaintiff,

v.                                              Case No. 05-C-0423

JOURNAL BROADCAST GROUP, INC.,
d/b/a/ WGBA-TV, NBC 26,

        Defendant.

---

**ORDER ON RULE 11(c) SANCTIONS**

---

These cases came before me on February 24, 2006, for a hearing on an order to show cause why plaintiff Dr. R.C. Samanta Roy Institute of Science and Technology, Inc. (SIST), and/or its attorney should not be sanctioned for violating Fed. R. Civ. P. 11(b)(1) and (3) for filing a lawsuit for an improper purpose and making allegations in a pleading that had no evidentiary support. More specifically, in my order of January 18, 2006 partially granting the defendants' request for fees pursuant to 42 U.S.C. § 1988, I directed Attorney Rebecca M. Brown, counsel for SIST, to appear

before the court and set forth the evidentiary support for the following allegations that appeared in its complaints in these matters:

> 1. that "the defendants intentionally conspired with numerous other news media outlets" and published or broadcast "false, defamatory and discriminatory statements about [SIST]" concerning the Exxon gas station owned by SIST in Ankola, Minnesota. (Lee Compl. ¶ 7; Journal Compl. ¶ 6.)
>
> 2. that the defendants published and or broadcast defamatory statements concerning SIST with malicious intent and/or reckless disregard with the intended purpose of destroying, preventing and infringing upon contractual relationships between SIST, its businesses, its tenants and the consuming public. (Lee Compl. ¶ 18; Journal Compl. ¶ 14.)
>
> 3. that the actions of either defendant were "motivated by the racially and ethnically distinct background of Dr. Roy, President of the Board of Directors of SIST." (Lee Compl. at ¶ 19; Journal Compl. at ¶ 15.)

(Jan. 18, 2006 Order at 7.)

At the hearing held in response to the court's order, Attorney Brown prefaced her remarks by explaining that her areas of practice are estate planning, business law, and probate, and that she was not familiar with civil rights or media law litigation. Ms. Brown stated that she filed the lawsuit because she is a member of the board of directors of SIST and, when reports unfavorable to SIST appeared in the Shawano Leader, which is owned by defendant Lee Enterprises, Inc., and on WGBA-TV, which is owned by defendant Journal Broadcasting Group, Inc., as well as in the Minneapolis media, the board directed her to file suit rather than retain the services of an attorney who was experienced in the relevant area of law. Ms. Brown explained that notwithstanding SIST's substantial property holdings and tax records showing net assets of more than $3.6 million in 2003, SIST was not "financially liquid" and therefore chose to file suit before hiring an experienced attorney with the understanding that she would be replaced by a more experienced lawyer later. She

2

stated that she worked with other attorney-members of SIST's board and also consulted with outside attorneys experienced in media law in preparing the complaints.

Of course, the fact that an attorney is not experienced in a particular area of law is not a defense to the imposition of Rule 11 sanctions. As the Seventh Circuit explained in *Hays v. Sony Corp. of America*, 847 F.2d 412, 419 (7th Cir. 1988), "the Rule 11 standard, like the negligence standard in tort law, is an objective standard." The Court further explained:

> There is no "locality rule" in legal malpractice, *see* Restatement (Second) of Torts, § 299A, comment g (1965), and while a legal specialist may be held to an even higher standard of care than a generalist, see *Sparks v. NLRB*, 835 F.2d 705, 707 (7th Cir.1987); cf. *Prosser and Keeton on the Law of Torts* 185 (5th ed. 1984), the generalist acts at his peril if he brings a suit in a field or forum with which he is unacquainted. A lawyer who lacks relevant expertise must either associate with him a lawyer who has it, or must bone up on the relevant law at every step in the way in recognition that his lack of experience makes him prone to error. *See* Bridgman, *Legal Malpractice--A Consideration of the Elements of a Strong Plaintiff's Case*, 30 S.Car.L.Rev. 213, 227-30 (1979). He must litigate very carefully, just as a new driver must drive very carefully.

847 F.2d at 419.

It is also true, on the other hand, that the fact that an attorney lacks experience in the particular area at issue is not, by itself, sufficient to warrant Rule 11 sanctions. Rule 11 provides that if an attorney presents a motion to a court for "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," monetary sanctions may be imposed. *See* Fed.R.Civ.P. 11(b)(1) & (c). Specifically, Rule 11 requires that an attorney and/or party certify to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that any pleading or motion presented to the court is not being presented for an improper purpose and that the allegations and other factual contentions have a legally sufficient basis to support the claim. *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir. 1998). When the certification is shown to be false, Rule 11(c) permits the imposition of monetary

3

sanctions. In deciding whether to award sanctions under Rule 11, the court should be mindful of the important purposes the Rule is designed to uphold. Although the primary purpose of a Rule 11 sanction is to punish the party or attorney who violates the rule, it also serves to spare an innocent party the cost of responding to frivolous suits by shifting costs and attorneys fees to the responsible party. *Brandt v. Schal Associates, Inc.*, 960 F.2d 640, 646 (7th Cir. 1992). Still, the Rule is not to be used to improperly shift the cost of a lawsuit to the victor in violation of the otherwise applicable American rule under which each party bears its own costs. *Id.* Finally, because "Rule 11 sanctions have significant impact beyond the merits of the individual case" and can affect the reputation and creativity of counsel, the court must exercise caution in deciding when and in what amount they are warranted. *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir.1994) (citing *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 936 (7th Cir.1989) (en banc)).

In response to the specific questions raised in the Court's order to show cause, Attorney Brown explained that far from filing the lawsuits for the purpose of harassing the defendants, SIST sued in order to stop the harassment by the media which was seriously damaging its ability to do business. Though given the opportunity to present evidence in support of the allegations set forth in SIST's complaints, Attorney Brown offered only her own summary of the facts that she believed supported those allegations. According to Attorney Brown, the central defamatory statement that the defendants made about SIST was their characterization of SIST as a "cult". While the complaints in each case contain allegations that the defendants published statements in which SIST was referred to as a "cult" (Lee Complt. ¶¶ 14, 15; Journal Complt. ¶¶ 12, 13), the allegations in the Lee Complaint are that the Shawano Leader quoted others who described SIST as a cult. Paragraph 14 of the Lee Complaint, for example, alleges that "the article stated, 'Brandt said she is nervous about Samanta Roy's group, which she said she believes is a cult. "He's scary," she said.'" WGBA

4

broadcasts, on the other hand, were, according to SIST, more direct. SIST alleged that "between December 2004 and the present, WGBA-TV has requested, encouraged and solicited its viewing audience to provide 'news tips' concerning the Plaintiff, through a new bit believed to be entitled 'Cult Watch.'" (Journal Complt. ¶ 12.) SIST further alleged that WGBA published at its website a headline stating that the "Ramas cult" was late in paying property taxes on land it owned in and around Shawano County, and that former members suggested that the taxes were intentionally unpaid so that "cult leaders" could push members for more donations. (*Id.* ¶ 13.) The characterization of SIST by WGBA as a cult, combined with the other conduct by it described in the complaint, including open and intrusive surveillance of SIST's properties and businesses, and that of its tenants, with reporters, helicopters, news vans, are alleged to have resulted in loss of business and damage to contractual relationships between SIST and its businesses, tenants, the consuming public, and its lenders. SIST claims that it is a non-stock corporation whose sole statement of purpose is education, and that the defendants' allegations that it is a cult are false and defamatory.

In response, the defendants argue that the characterization of SIST as a "cult" cannot be found defamatory because "the question is an ecclesiastical matter that could not be tried in a court of law." (Feb. 24, 2006 letter from Atty. Gregory B. Conway.) In support of this argument, defendants cite a recent decision of the Texas Court of Appeals, *Harvest House Publishers v. Local Church*, 190 S.W.3d 204 (Tex. Ct. App. 2006). In that case, a church that was listed in a book about religious cults brought a libel action against the authors and publisher of the book. The Texas court of appeals reversed the lower court's denial of the defendants' motion for summary judgment, holding that the act of labeling the church as a "cult" in the book's introduction was not actionable as libel, because the truth or falsity of the statement depended upon one's religious beliefs, which

5

was an ecclesiastical matter that could not be tried in a court of law. *Id.* at 210. *See Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 707 (1976). Since a court may not inquire into the truth of religious beliefs, defendants suggest that a court is incapable of determining whether such a label is false, and thus their characterization of SIST as a "cult" cannot be considered defamatory as a matter of law.

There are several problems with defendants' reliance on *Harvest House Publishers*, however. The first is that as a decision of an intermediate state appellate court, it is not binding on this court. Even if it was binding, its holding would not support a finding that SIST's claims, which preceded *Harvest House Publishers* by almost a year, are frivolous or so lacking in legal support as to warrant the imposition of sanctions. Nor is the holding of *Harvest House Publishers* as sweeping as defendants suggest. It is clear from its decision that the court was not holding that labeling an organization a "cult" would insulate the authors from liability for statements attributing immoral or criminal acts to individual members. 190 S.W.3d at 213; *see also Briggs & Stratton Corp. v. National Catholic Reporter Pub. Co.*, 978 F.Supp. 1195, 1198 (E.D.Wis.1997) ("[T]o the extent that the articles can be construed as charging the plaintiffs with dishonorable or unethical conduct in their business operations, not related to religion per se, their claims will go forward."). Finally, and most importantly, a decision of the Seventh Circuit, which is binding on this court, holds that stating that one belongs to a cult can give rise to a claim of defamation. *Kennedy v. Children's Service Society of Wisconsin*, 17 F.3d 980, 984 (7th Cir. 1994) ("[I]t is clear that Gaunt's statements that the Kennedys were unsuitable parents because they belonged to a cult could give rise to a claim of defamation.").

In light of the foregoing, I am unable to conclude that SIST's central claim that the defendants defamed it and caused it damage by labeling it a cult is so lacking in evidentiary or legal

6

support as to warrant the imposition of Rule 11 sanctions. This is clearly the case with respect to SIST's complaint against Journal Broadcasting Group, which also includes allegations of trespassing and conducting intrusive surveillance of SIST's businesses, surreptitiously recording its employees, and accusing it of not paying its taxes so that it can push for donations, all of which are alleged to have been done with the intent and effect of harming SIST in its business dealings in the community. It is these allegations that form the basis of SIST's state law claims against Journal Broadcasting. Those claims were dismissed without prejudice, and I have no basis on this record to conclude that they lack evidentiary support.

The same is true with respect to Lee Enterprises, though it is not alleged to have engaged in such intrusive and potentially unlawful investigative efforts. Although the question is admittedly closer, I reach the same conclusion as I did with respect to Journal Broadcasting. An attachment to the complaint lists 43 such articles since March 2003, including a synopsis of each. Although most appear from the synopsis completely innocuous, some explicitly delve into the gossip and rumor surrounding Dr. Roy, his background and SIST. The synopsis for a October 15, 2004 article, for example, reads:

> "Debatable cult label hangs over Dr. R.C. Samanta Roy's group." Interview with Rick Ross, who studies cults, and has met with former members. Ross "defines" various types of cults, and states that he thinks based on his interviews with former members, might be a destructive cult. Ross gives examples of other groups buying properties in a town to be able [to] have influence over a town.

(Lee Compl., Attachment.)

Of course, the fact that a newspaper only publishes what others have said about an organization or person is not a defense to an action for defamation. "One who repeats or otherwise republishes defamatory matter is subject to liability as if he had originally published it." Restatement (Second) of Torts § 578 (1977). "The law is well settled that it is no justification in

7

an action for libel, that the libelous matter was previously published by a third person, and that the defendant, at the time of his publication, disclosed the name of that person and believed all the statements in the libel to be true." *Hart v. Bennet*, 672 N.W.2d 306, 318 (Wis. Ct. App. 2003). If, as SIST alleges, The Shawano Leader repeatedly published articles and editorials in which it falsely characterized SIST as a cult, knowing that the effect of its articles and editorials would be to damage SIST in its business relations and in its relations with the public, I cannot say that SIST's state law claims of defamation and interference with business relationships are so lacking in evidentiary support as to warrant the imposition of Rule 11 sanctions.

With respect to the charge that the defendants had "conspired with numerous other media outlets," Attorney Brown pointed to the fact that many newspapers and television stations had run articles or broadcast news reports about the activities of SIST. The fact that they were all reporting about SIST, she suggested, is evidence of a conspiracy. By way of evidence supporting the allegation that the defendants had published and/or broadcast defamatory statements concerning SIST, Attorney Brown pointed to the use of the term "cult" in the reports. She also claimed that a headline that read "Samanta Roy Purchases Near $5 Million" was false and defamatory because in fact it was the Dr. R.C. Samanta Roy Institute of Science and Technology, and not Dr. Roy personally, that has purchased property in the Shawano area. Finally, Attorney Brown argued that evidence that the defendants were motivated by the racially and ethnically distinct background of Dr. Roy consisted of the fact many of the past reports about SIST referred to India as Dr. Roy's country of origin. Overall, Attorney Brown claimed that the fact that the defendants, as well as other media outlets, focused on the activities of SIST and essentially ignored similar activities of other businesses suggested discriminatory animus.

8

Although these claims appeared implausible from the outset, they are no more questionable than dozens of complaints filed in this court every year, and very few (if any) of these complaints warrant the imposition of sanctions. While many of these claims are filed by individuals appearing *pro se,* just as many are filed by people or corporations represented by counsel. It is part of the cost of doing business, both for the court as an institution as well as for defendants forced to defend such lawsuits. Surely one can make the argument that perhaps Rule 11 should have more teeth, or that a losing party should pay the other's attorney's fees; but in our system as it now stands Rule 11 is a drastic remedy meant to punish only the most baseless or abusive lawsuits. These concerns are especially salient when the allegation involves a discriminatory animus, as it does here, because what appears dubious from the outside may appear very real to the plaintiff bringing the claim. Courts in such cases should be reluctant to punish the plaintiff lest the threat of sanctions chill bona fide civil rights claims. Here, although the fact that various newspapers and television stations have chosen to report on SIST's activities is not concrete *evidence* of a conspiracy, it is at least enough to support a claim against a charge of Rule 11 violations.

The same holds true for the plaintiff's other allegations, such as the claim that the defendants made false and defamatory statements. While certain of the allegations appear to have had little factual support, by and large they were part and parcel of the rest of the complaint. As to SIST's assertion that the defendants defamed it by labeling it a "cult," similar considerations apply. The claims appear quite weak, both legally and factually, but one must remember that defamation lawsuits are almost universally disfavored by the law. *See, e.g., Andresen v. Diorio,* 349 F.3d 8, 17 (1st Cir. 2003) (citing *Eyal v. Helen Broad. Corp.,* 583 N.E.2d 228, 231 n. 7 (1991)). Thus, the fact that the claim did not pan out is somewhat unsurprising. Moreover, as noted earlier, it is not crystal

9

clear that the "cult" label is either too vague or too intermingled with religious determinations to support a defamation claim.

In sum, I conclude that the claims were unsupported and the lawsuit, in general, has been a most unproductive undertaking for all parties concerned. Nevertheless, the allegations in the complaint are not of the ilk that would warrant the imposition of additional sanctions. Moreover, there is no evidence that the claims were brought for any improper purpose. Accordingly, I decline to order additional sanctions in this case.

There remains the question of what fees should be awarded to the defendants for their defense against SIST's claim under § 42 U.S.C. § 1985. I concluded that this claim was baseless and warranted an award of fees pursuant to 42 U.S.C. § 1988 in my order of January 18, 2006. Defendants have now submitted fee requests setting forth the specific defense costs attributable to this claim. Lee Enterprises seeks fees totaling $4,950.58, and Journal Broadcast Group seeks fees of $5,899.75. SIST has objected only to that portion of each request that was incurred in preparing the fee request itself. Given the need to isolate the work attributable to defense of SIST's § 1985 claim from the other work it performed in the case, as well as this court's admonition to heed the Seventh Circuit's caution concerning excessive fee requests *see Budget Rent-A-Car System, Inc. v. Consolidated Equity L.L.C.*, 428 F.3d 717, 718 (7th Cir. 2005), the preparation of the defendants' fee requests proved to be more complicated than normal. Fees attributable to this task amounted to $1,142.25 of Lee Enterprises' fee request and $1,240 of Journal Broadcast Group's request.

I find that the defendants's requests for fees incurred in connection with their defense of SIST's § 1985 claims against them are reasonable, including those portions attributed to preparation of their respective fee petitions. The affidavits submitted by the defendants reflect significant work expended in an attempt to make clear both to the court and SIST precisely what work was done in

10

connection with the § 1985 claim. This work very likely accounts for SIST's decision to contest only that portion attributable to preparation of the petition itself. A fee award under 42 U.S.C. § 1988 includes fees incurred in connection with a request for fees. *Muscare v. Quinn*, 680 F.2d 42 (7th Cir.1982). Considered in light of the overall fees incurred by the defendants in this matter, the partial awards requested for defense of the § 1985 claims are clearly reasonable. Accordingly, SIST is ordered to pay defendant Lee Enterprises attorneys fees pursuant to 42 U.S.C. § 1988 in the amount of $4,950.58, and defendant Journal Broadcasting Group in the amount $5,899.75. As to all other claims, statutory costs are awarded to the defendants.

**SO ORDERED** this ___2nd___ day of August, 2006.

                                              s/ William C. Griesbach
                                              William C. Griesbach
                                              United States District Judge